UNITED STATES DISTRICT COURT
EASTERN DISTCT OF MICHIGAN
SOUTHERN DIVISION

AMAL HUSSEIN NASSAR,

        Plaintiff,        Civil Action No.: 15-10683
                                    Honorable Denise Page Hood
        v.                Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.
_____/

### REPORT AND RECOMMENDATION
### ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [R. 10, 11]

     Plaintiff Amal Hussein Nassar appeals a final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for supplemental security income benefits ("SSI") under the Social Security Act (the "Act").  Both parties have filed summary judgment motions, referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  The Court finds that the decision by the administrative law judge ("ALJ") is supported by substantial evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion **[R. 11]** be **GRANTED**;
- Nassar's motion **[R. 10]** be **DENIED**; and,

- the Commissioner's decision be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

I.    BACKGROUND

**A. Nassar's Background and Disability Application**

Born in October 1980, Nassar was 32 at the time of the July 2013 hearing before the ALJ and 12 when she moved from Lebanon to the United States in 1992. [R. 7-2, Tr. 112-13]. She completed the tenth grade before dropping out of school when she got married. [*Id.*, Tr. 113-14]. Nassar's only job was as a cashier in 2007. [*Id.*, Tr. 121; R. 7-5, Tr. 226; R. 7-6, Tr. 250]. She testified that she quit her job because of her kids; she has five. [*Id.*, Tr. 116 & 121]. When Nassar applied for SSI benefits, she claimed disability due to a "broke back." [R. 7-6, Tr. 249]. However, at the hearing, Nassar additionally claimed that she suffered from herniated discs in her cervical spine, radiculopathy involving the lower extremities, dizziness, tinnitus, blood pressure, thyroid dysfunction, memory loss and moderate cognitive communication impairment. [R. 7-2, Tr. 105-07]. She claims that many of these impairments resulted from two car accidents, one in August 2011 and the other in December 2012. [R. 7-9, Tr. 526]. Nassar's alleged onset date is January 23, 2012. [*Id.*, Tr. 104-05].

Nassar and a vocational expert (VE) testified at the hearing. [R. 7-2,

Tr. 104-43]. In an October 25, 2013 written decision, the ALJ found Nassar to be not disabled. [*Id.*, Tr. 87-97]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Nassar timely filed for judicial review. [*Id.*, Tr. 1-3; R. 1].

### B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 416.920(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 920(c).

3

assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Nassar was not disabled. At the first step, he found that Nassar had not engaged in substantial gainful activity since her onset date. [R. 7-2, Tr. 89]. At the second step, he found that Nassar had the severe impairments of "disc herniations at C3-C4 on right and C5-C6 on the left; C7 radiculopathy in left upper extremity (non-dormant); compression fracture L-1; major depressive disorder, recurrent, moderate; anxiety disorder, NOS; morbid obesity; pain disorder." [*Id.*]. Next, the ALJ concluded that none of Nassar's impairments, either alone or in combination, met or medically equaled the severity of the listed impairments. [*Id.*, Tr. 90].

At the fourth step, the ALJ found that Nassar had the RFC to perform sedentary work, but with a number of exertional limitations, and with the

non-exertional limitations of "simple, routine and repetitive tasks with only occasional interaction with public and coworkers." [*Id.*, Tr. 91]. Since Nassar had no past relevant work, the ALJ proceeded to the final step. [*Id.*, Tr. 95]. At the fifth step, after considering Nassar's age, limited education, work experience, RFC, and the testimony of the VE, the ALJ determined that there are jobs that exists in significant numbers that Nassar can perform, including positions for bench hands, hand packagers and security monitors. [*Id.*, Tr. 96].

## II.     ANALYSIS

This Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).[2] Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining

---

[2] Opinions analyzing applications for Disability Insurance Benefits are applicable because the same standards apply to SSI claims. *See* 20 C.F.R. §§ 404.1520 and 416.920.

whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

The significant deference accorded the Commissioner's decision is conditioned on the ALJ's adherence to governing standards. "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings." *Gentry*, 741 F.3d at 723. *See also Rogers*, 486 F.3d at 249. In other words, substantial evidence cannot be based upon fragments of the evidence, and "must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

The Commissioner must also adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has been prejudiced or deprived of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). An ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless. *Id.* at 655-56.

Here, Nassar alleges four errors that all pertain to her mental RFC: (1) the RFC does not adequately account for her moderate difficulties with concentration, persistence of pace (CPP); (2) the ALJ gave insufficient

6

weight to the opinion of a consultative neuropsychologist's opinion; (3) the ALJ did not give valid reasons for determining that she was less than credible; and (4) the ALJ improperly rendered an opinion without the assistance of a medical source.  The Court finds that each of these alleged errors is without merit and recommends that the ALJ's decision be affirmed.

### A. Moderate Difficulties with CPP

At step three, when determining that Nassar did not have an impairment that met a listing, the ALJ concluded that she had moderate difficulties with CPP, with the caveat that this conclusion did not constitute a mental RFC.  [R. 7-2, Tr. 90-91].  He then limited Nassar in his assessment of her RFC to simple, routine and repetitive work, noting that speech therapy records showed her difficulties with memory and communication to have improved, and that, although Nassar had performed at the 1st percentile on various memory tests in July and August 2013, the psychologist who administered the tests noted that the scores were out of proportion to Nassar's injury and reflected her being overwhelmed by the memory tasks.  [*Id.*, Tr. 91, 93-94].

Nassar cites *Ealy v. Comm'r of Soc. Sec.*, 594 F3d. 504, 516 (6th Cir. 2010), to support her argument that limiting her to simple, routine and repetitive work is insufficient to account for her moderate limitations in CPP.

"However, *Ealy* does not hold that the terms "simple, repetitive," "routine" or similar modifiers are intrinsically inadequate to address moderate CPP deficiencies." *Smith v. Comm'r of Soc. Sec.*, No. 13-11610, 2014 WL 4605826, at *11 (E.D. Mich. Sept. 15, 2014). Further, courts have held that there is nothing inconsistent with a finding of moderate difficulties with CPP at step three and an RFC limiting the claimant to simple, routine tasks. *Southworth v. Comm'r of Soc. Sec.*, No. 12-12243, 2013 WL 3388946, at *16 (E.D. Mich. July 8, 2013) (collecting cases).

Moreover, it is Nassar's burden to prove that she requires a more restrictive mental RFC. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). As described below, Nassar's medical records fail to demonstrate that she does not have the capacity for simple, routine and repetitive tasks.

**B. The Weight Given the Opinion of the Neuropsychologist**

On four dates in July and August 2013, neuropsychologist Charles Seigerman, Ph.D. examined Nassar on a consultative basis, at the request of treating neurologist Nilofer Nisar, M.D. [R. 7-10, 591-97]. Dr. Seigerman administered a battery of tests, and recorded Nassar's self-reports of medical history, and behavioral and personality data. [*Id.*, Tr. 591-93]. His testing included a validity assessment, which he concluded demonstrated

"some decreased effort potentially of [sic] some of the memory testing," and that while "the patient put forth adequate effort on testing . . . some of the scores are greatly out of proportion to the patient's report of injury." [*Id.*, Tr. 593-94]. Nassar's scores on memory testing were within the mild to moderately impaired, and moderately to severely impaired ranges, but Dr. Seigerman reiterated that they were out of proportion to documented and reported injuries "and reflects being overwhelmed by memory tasks." [*Id.,* Tr. 594-96].

Dr. Seigerman diagnosed Nassar with major depression, anxiety and pain disorders, dysnomia (a learning disability) and chronic pain syndrome. [*Id.*, Tr. 596]. He opined that she may have sustained concussions in one or both of her accidents, and that a "vicious cycle of pain, depression, and lack of sleep" further impacted her thinking. [*Id.,* Tr. 597]. Dr. Seigerman concluded that Nassar was not capable of working at that time. [*Id.*]

The ALJ gave Dr. Seigerman's opinion limited weight, "as it appears to be overly sympathetic and based upon the claimant's subjective complaints," and because the neuropsychologist "seemed to uncritically accept most, if not all, of what the claimant reported." [R. 7-2, Tr. 94]. The ALJ additionally found that Dr. Seigerman's opinion was not supported by the record as a whole. [*Id.*].

9

The Court agrees with Nassar, on the one hand, that the ALJ's was overly dismissive of the bases of Dr. Seigerman's opinion. Dr. Seigerman's opinion was derived not only from Nassar's subjective reports, but also from a battery of mental function testing and his expertise. "[W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology." *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989).

On the other hand, the ALJ was not required to defer to Dr. Seigerman's opinion because he was not a treating physician, and his opinion that Nassar is not capable of working is a matter reserved for the commissioner. 20 C.F.R. § 416.927(c) & (d)(1); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013); *Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 475 (6th Cir. 2008). Rather than deferring to Dr. Seigerman's opinion, the ALJ was required to consider whether it was consistent with the record as a whole. § 927(c)(4). This regulation makes sense here, because Dr. Seigerman was not privy to the record as a whole.

There is substantial evidence supporting the ALJ's determination that Dr. Seigerman's opinion was not consistent with the record as a whole. While Dr. Seigerman believed that Nassar's mental limitations resulted

from her two accidents and possible concussions, the record demonstrates that she suffered no head injury and demonstrated no neurological deficits following her August 2011 accident. [R. 7-7, Tr. 298-99, 301-02, 309-12, 315, 319, 322, 325]. Neurological examinations in October 2011, November 2011 and November 2012 continued to reveal no mental deficits. [*Id.*, Tr. 343, 347, 426].

There are no records from the immediate aftermath of Nassar's December 2012 accident, so it is unclear whether she sustained a head injury or neurological deficits from that accident. The first mention of memory loss was during an appointment with Dr. Nisar in February 2013. [R. 7-10, Tr. 554-555]. Nassar began treating with a speech therapist in May 2013 and reported that she began experiencing memory deficits after her August 2011 accident (contradicting the previously mentioned records). [R. 7-9, Tr. 526]. She was determined to have memory deficits, but by June 2013 she reported remembering things better and appeared to be "able to use strategies to compensate for memory." [*Id.*, Tr. 534-35]. The Court agrees that these records do not substantiate the severe impairments Dr. Seigerman described, and give validity to his recognition that her test results are out proportion with her documented injuries.

Of final note, although the ALJ gave Dr. Seigerman's opinion limited

11

weight, he did not disregard it altogether, as he included major depressive, anxiety and pain disorders as being among Nassar's severe impairments. [R. 7-2, Tr. 89]. Given the evidence in the record (and the lack thereof), the ALJ acted within his discretion in not going the step further and adopting Dr. Seigerman's conclusion that Nassar is incapable of working.

### C. Credibility Determination

Credibility determinations of witnesses are within the province of the ALJ and should not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Here, the ALJ determined that Nassar was not entirely credible, relying upon the medical records, her apparent ability to care for her young children without assistance from her disabled husband, and because she stopped working for reasons unrelated to her medical problems. [R. 7-2, Tr. 95]. Nassar takes issue with the latter two reasons, but does not provide a compelling reason to disturb the ALJ's credibility determination.

During the hearing, Nassar testified that she and her husband both have caregivers who stay with them eight hours a day, and that another attendant cleans the house two hours a day. [R. 7-2, Tr. 117-18, 120-21]. Given that, she argues that the ALJ made an unfounded assumption that she could care for her children without assistance. The Commissioner

cites *DePottey v. Comm'r of Soc. Sec.*, No. 13-CV-13305, 2014 WL 4197362, at *3 (E.D. Mich. Aug. 22, 2014), but that opinion is inapposite because the claimant in that case testified to daily activities that included caring for her children, while Nassar did not.  Nonetheless, even if the ALJ erred by relying upon Nassar's ability to care for her children, his credibility determination is otherwise supported by the record.

Nassar argues that the fact that she stopped working for reasons unrelated to her medical impairments is irrelevant since she stopped working in 2007 and was involved in two intervening accidents.  The Commissioner cites *McDonald v. Comm'r of Soc. Sec.*, No. 13-12312, 2014 WL 1922790, at *13 (E.D. Mich. May 14, 2014), as upholding the ALJ's credibility determination in part because "[t]he ALJ further properly noted that there is evidence that the claimant stopped working for reasons not related to the allegedly disabling impairments." (Internal quotation marks omitted.)

The Court finds that Nassar's lack of employment history was a legitimate consideration for the ALJ's credibility determination.  *McDonald* is not the only court to consider a claimant's employment history as being relevant to credibility.  *See Maxwell v. Astrue*, No. CIV.A 09-231-DLB, 2010 WL 1418725, at *3 (E.D. Ky. Apr. 7, 2010) ("Furthermore, the ALJ found

that the Plaintiff has never worked, which raises questions about whether her current unemployment is a result of her medical problems."); *Noble v. Colvin*, No. 5:12-CV-329-JMH, 2013 WL 3771496, at *6 (E.D. Ky. July 17, 2013) (legitimate factors for discounting credibility included "the fact that claimant has never worked, raising questions as to whether her current unemployment is truly the result of medical problems."). Nassar's insignificant employment history renders her substantially equivalent to the claimants in *Maxwell* and *Noble*.

Finally, the medical evidence recited above does not support Nassar's claim that her mental limitations are more severe than the ALJ found them to be. As noted, the ALJ determined that she suffers from severe mental impairments, but that the medical evidence does reveal her incapable of sedentary work that is simple, routine and repetitive. Nassar has presented insufficient evidence for the Court to disturb the ALJ's determination that her claim that she is more limited than that is not credible.

**D. Supportability of RFC**

Nassar's final argument is that the ALJ erred because he was either was required to rely upon Dr. Seigerman's opinion or to order a consultative evaluation to determine her mental RFC, and he did neither.

14

Contrary to Nassar's argument, "[t]he ALJ was not required to obtain a medical expert to interpret the medical evidence related to [her mental] impairments. In fact, the regulations require the ALJ to evaluate the medical evidence to determine whether a claimant is disabled." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 726 (6th Cir. 2013) (citing 20 C.F.R. § 416.945). As the Commissioner notes, *Rudd* was issued after the district court opinions upon which Nassar relies. [*See* R. 10, PgID 687].

For the reasons already examined, Nassar has not carried her burden of demonstrating that the ALJ's assessment of her RFC was insufficient.

### III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Nassar's Motion for Summary Judgment **[R. 10]** be **DENIED**, the Commissioner's Motion **[R. 11]** be **GRANTED** and this case be **AFFIRMED**.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: January 27, 2016

## **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in**

**length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 27, 2016.

> s/Marlena Williams
> MARLENA WILLIAMS
> Case Manager